11-5425, 12-1382
LJL 33rd Street Associates, LLC v. Pitcairn Properties Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: December 13, 2012          Decided: July 31, 2013)

Docket No. 11-5425-cv,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LJL 33RD STREET ASSOCIATES, LLC,
          *Plaintiff-Cross-Defendant-Appellant*,

v.

PITCAIRN PROPERTIES INC.,
          *Defendant-Cross-Claimant-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

(Argued: April 15, 2013          Decided: July 31, 2013)

Docket No. 12-1382-cv,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PITCAIRN PROPERTIES INC.,
          *Plaintiff-Appellant*,

v.

LJL 33RD STREET ASSOCIATES, LLC,
          *Defendant-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL, POOLER, LIVINGSTON *Circuit Judges*.

LJL 33rd Street Associates, LLC appeals from an order of the United States District Court for the Southern District of New York (Rakoff, *J.*) reviewing an arbitration award. The district court vacated the arbitrator's determination of fair market value based on the court's conclusion that the arbitrator violated the Federal Arbitration Act, 9 U.S.C. §10(a)(3), by excluding certain evidence offered by Pitcairn Properties, Inc., but upheld the arbitrator's refusal of LJL's demand for a determination of the Purchase Price. The Court of Appeals (Leval, *J.*) concludes that the arbitrator acted within its discretion in excluding the evidence, and in declining to determine the Purchase Price.

In a separate action, Pitcairn appeals from an order of the United States District Court for the Southern District of New York (Rakoff, *J.*) dismissing its claims against LJL for breach of fiduciary duties and breach of the implied covenant of good faith and fair dealing. The Court of Appeals (Leval, *J.*) concludes that Pitcairn's claims were properly dismissed. **AFFIRMED IN PART, VACATED IN PART,** and **REMANDED** with instructions to confirm the award.

For LJL 33rd Street Associates, LLC:     THEODORE S. STEINGUT, New York, NY.

For Pitcairn Properties, Inc.:     GLENN A. WEINER (Brian R. Fitzgerland, *on the brief*), Klehr Harrison Harvey Branzburg LLP, Philadelphia, PA.

LEVAL, *Circuit Judge*:

LJL 33rd Street Associates, LLC ("LJL") and Pitcairn Properties Inc. ("Pitcairn"), adversaries in two related litigations in the United States District Court for the Southern District of New York (Rakoff, *J.*), each appeal from district court rulings. The controversy between LJL and Pitcairn arises out of LJL's exercise of its contractual option to purchase Pitcairn's ownership stake in a jointly owned high-rise luxury residential building in New York City, after which the parties pursued an arbitration to determine the value of the property. The arbitrator determined that the Stated Value (essentially the fair market value) of the building was $56.5 million, but refused to make a determination of the Purchase Price to be paid by LJL (Stated Value minus certain specified deductions for liabilities, etc.). The district court vacated the

arbitrator's determination of the Stated Value, based on its conclusion that the arbitrator committed misconduct in violation of the Federal Arbitration Act, 9 U.S.C. § 10(a)(3), in excluding certain hearsay evidence offered by Pitcairn. The district court upheld the arbitrator's refusal to determine the Purchase Price. LJL appeals from both rulings.

In a separate action, Pitcairn appeals from the court's dismissal of Pitcairn's claims that LJL breached its fiduciary duties and the covenant of good faith and fair dealing in its exercise of the purchase option and in alleged subsequent interference with Pitcairn's efforts to ascertain the market value of Pitcairn's ownership stake in the building.

In LJL's appeal, we agree with its contention that the arbitrator's exclusion of Pitcairn's hearsay exhibits was within the arbitrator's authorized discretion. We therefore vacate the district court's order overturning the arbitrator's determination of the Stated Value. We agree with the district court's conclusion that the arbitrator acted in accordance with the terms of the arbitration agreement in refusing to determine the Purchase Price. We therefore remand with instructions to confirm the arbitration award in its entirety. In Pitcairn's appeal, we find no error in the district court's dismissal of Pitcairn's claims for breach of fiduciary duties and breach of the covenant of good faith and fair dealing. We therefore affirm that judgment.

**BACKGROUND**

**A.      The Property and the Operating Agreement**

LJL and Pitcairn are the sole equity owners of a limited liability company known as 35-39 West 33rd Street Associates, LLC (the "Company"), whose sole asset is a luxury high-rise apartment complex at 35-39 West 33rd Street in Manhattan (the "Property")**.** Pitcairn is a wholly owned subsidiary of Pitcairn Properties Holdings, Inc. ("Pitcairn Holdings") and owns 49.99%

of the Company. Pitcairn is an owner, developer, and manager of real estate assets, and manages the Property.  LJL is a New Jersey limited liability company, owned by Les Lustbader and his children, Jared and Lauren Lustbader, that owns 50.01% of the Company.

LJL and Pitcairn have an elaborate and specific Operating Agreement governing aspects of their shared ownership of the Company; the agreement provides an arbitration clause of limited scope. The sections of the Operating Agreement of particular pertinence to this appeal are Sections 8.8, 6.12(c), and 11.19. The agreement specifies two terms of significance: Stated Value and Purchase Price, which are defined in Section 6.12 to mean *grosso modo* fair market value and fair market value minus liabilities.

Section 8.8 gives LJL the option, if Salah A. Mekkawy ceases to be employed by Pitcairn, to purchase Pitcairn's interest "pursuant to the terms, conditions and procedures set forth in Section 6.12(c)." It goes on to add that the Stated Value shall be determined by agreement between Pitcairn and LJL, but "[i]f Pitcairn and LJL are unable to agree upon the Stated Value . . . , then either party may elect that such dispute be determined by Expedited Arbitration pursuant to Section 11.19, whereupon the arbitrator shall select an independent, third party . . . appraiser who shall determine the Stated Value."

Section 6.12(c) explains how the Purchase Price (the price to be paid by LJL for Pitcairn's interest) is to be derived from Stated Value. (The full text of Sections 8.8 and 6.12(c), insofar as pertinent, are set out in the margin.)[1]

---

[1] Section 6.12(c) of the Operating Agreement provides, in relevant part:
    The purchase price ("Buy/Sell Purchase Price") of the Interest of the selling Member ("Selling Member") shall be payable in cash by the purchasing Member ("Purchasing Member") and will be such as will produce for Selling Member the same cash consideration as Selling Member would have received if the assets of the Company had been sold on the Buy/Sell Transfer Date to a third party in an

Section 11.19 states that arbitrated disputes will be resolved by "the Expedited Arbitration procedures of the American Arbitration Association" with certain modifications, including that each party "shall be entitled to present evidence and witnesses to support its position and to cross-examine witnesses presented by the other." It specifies,

> Any provision of this Agreement which specifically provides that a dispute will be resolved by the Expedited Arbitration provided in this Section 11.19 shall be resolved by the Expedited Arbitration Procedures of the American Arbitration Association. . . . In rendering such decision and award, the arbitrators shall not add to, subtract from or otherwise modify the provisions of the Agreement and may only determine the issue or question presented as their award.

---

all-cash sale for a purchase price equal to the Stated Value (subject to the prorations provided in Section 6.12(c)(iii)(D)), as if the Company had been dissolved and wound up following such sale and the proceeds of such sale remaining after discharge and payment of all Company liabilities had been distributed to the Members in accordance with the provisions of Articles V and X of this Agreement (including, without limitation, the repayment of any loans made by the Selling Member or the Purchasing Member to the Company).
    (Emphases omitted).

Section 8.8 of the Operating Agreement provides, in relevant part:
    If at any time after the date of this Agreement, Salah A. Mekkawy shall no longer be employed by Pitcairn or its parent company, Pitcairn Properties Holdings, Inc. ("PPHI"), then, within 5 days after such termination of employment, Pitcairn or PPHI shall be obligated to provide written notice of such termination of employment to LJL. Upon receipt by LJL of such aforementioned written notice, LJL shall by written notice to Pitcairn and the Company, have the right to purchase Pitcairn's Interest (in whole but not in part), pursuant to the terms, conditions and procedures set forth in Section 6.12(c) of this Agreement (as modified pursuant to this Section 8.8); provided, however, such right to purchase shall expire thirty (30) days after the last date of employment of Salah A. Mekkawy by Pitcairn or PPHI, provided that LJL shall have received notice of such termination of employment of Salah A. Mekkawy. The Stated Value in effecting the sale and purchase of Pitcairn's Interest pursuant to this Section 8.8 shall be determined by agreement between Pitcairn and LJL. If Pitcairn and LJL are unable to agree upon the Stated Value within ten (10) Business Days, then either party may elect that such dispute be determined by Expedited Arbitration pursuant to Section 11.19, whereupon the arbitrator shall select an independent, third party MAl appraiser who shall determine the Stated Value.
    (Emphases omitted).

**B.     The ouster of Mekkawy and LJL's exercise of the option**

In the summer of 2010 a preferred shareholder of Pitcairn Holdings sought to take over its board. The management, led by then-CEO Mekkawy, tried to block the takeover through an action in Delaware Chancery Court, and also filed for bankruptcy.  That litigation was settled in September 2010. After the settlement, the preferred shareholder took over the board of Pitcairn Holdings and Mekkawy received a new employment agreement involving a "change of title and duties," and a diminished role.  In early October 2010, without the knowledge of Pitcairn's senior officers or Board, Mekkawy told LJL that he would be leaving Pitcairn.

On October 7, 2010, Pitcairn's Chief Operating Officer and two other employees met with Jared Lustbader (one of LJL's principals). At the time, Pitcairn was considering whether it should terminate Mekkawy. During this meeting, there was discussion of Mekkawy's potential termination. Pitcairn alleges that:

> Pitcairn's representatives met with Lustbader and specifically discussed Mekkawy's potential separation from Pitcairn. Lustbader, having been tipped off by Mekkawy, and knowing and intending that Pitcairn would take action accordingly, told Pitcairn's representatives that LJL did not like Mekkawy, did not want to deal with him and did not trust him. Lustbader further acknowledged that Mekkawy was not involved with management of the Property and that LJL had no problem with Mekkawy's departure from Pitcairn. Lustbader also said that LJL was comfortable with Pitcairn's management of the Property, which he complimented. Lustbader did not tell Pitcairn's representatives that LJL would try to exercise the purchase option in § 8.8 of the Operating Agreement if Pitcairn terminated Mekkawy.

Pitcairn did not ask LJL whether it would exercise its option if Mekkawy were terminated. There was no mention of the option during the meeting. The Board of Pitcairn Holdings voted on October 18, 2010 to terminate Mekkawy's employment. Pitcairn asserts in its Complaint that the decision was made "relying in part on Lustbader's comments regarding Mekkawy." Ten days later, Pitcairn informed LJL of Mekkaway's termination. Pitcairn alleges that in this

-6-

conversation, Les and Jared Lustbader reiterated their dislike for Mekkawy and their approval of his termination, and said nothing of their plan to exercise the Purchase Option.

On November 2, 2010 LJL formally exercised its Purchase Option under Section 8.8 of the Operating Agreement. LJL asserted that the value of the Property was $49.8 million, barely more than the $48.4 million in debt on the Property. Pitcairn asserted that the Property was worth $62-$72 million. Pitcairn proposed selling the Property to Equity Residential, which Pitcairn asserts had offered $68 million, or alternatively offering the property for sale so as to determine the true market price. LJL refused both proposals. LJL's attorney also sent a letter to Equity advising that it "respectfully demands that you cease and desist from any further involvement in this matter" and stating that LJL "reserve[s] all of its rights and remedies at law or in equity concerning the Company, or against you or [Pitcairn] with respect to the matters embraced hereby."

**C.    The arbitration proceeding and the excluded evidence**

As the parties did not agree on the price, LJL filed an arbitration demand pursuant to its option agreement, asking for determination of both the Stated Value and Purchase Price. Pitcairn objected to the demand for determination of the Purchase Price, arguing that the agreement provides for arbitration of only the Stated Value, and not the Purchase Price.

The parties selected Jonathan T.K. Cohen as their arbitrator, and he selected appraiser James Levy to determine the Property's value. At the arbitration hearing, each party introduced testimony and reports of appraisers, and each party cross-examined the other side's witnesses. LJL's appraiser testified that the Property had a value of approximately $50-52 million, while Pitcairn's appraiser testified to a value of approximately $65 million.

LJL objected on hearsay and other grounds to four of Pitcairn's exhibits. These were: (1)

An "asset summary" report of Eastdil, a real estate banking firm, stating that the value of the Property is between $63 million and $71.9 million, with a midpoint of $67.2 million; (2) A valuation of the Property made by CBRE Capital Advisors, drawn from discussion materials presented by CBRE to Pitcairn's board of directors on July 22, 2010, which values the Property between $63,194,800 and $71,541,600; (3) A June 22, 2010 letter of Eric Blum, the managing member of PPH Investments Management, LLC (which was at the time of the letter the preferred shareholder of Pitcairn Holdings, and which later took over its board and ousted Mekkawy) stating that PPHI valued the Property "in the low $60 millions"; and (4) Equity Residential's non-binding "letter of intent" to purchase the Property for $68 million. Pitcairn did not call witnesses to testify to or defend what was stated in the four exhibits. The arbitrator sustained LJL's objections to these four exhibits, without explanation beyond the statement that they "shall not be admitted into evidence and shall not be considered by the Arbitrator or the neutral appraisal expert . . . ."

Based on the appraiser's appraisal, the arbitrator entered an award determining the Stated Value as $56.5 million and declined to determine the Purchase Price. LJL moved to modify the award with respect to the decision not to determine the Purchase Price. The arbitrator denied the motion. Subsequent to the arbitration, Pitcairn initiated a "Buy/Sell" procedure provided for in Section 6.12 of the Operating Agreement, under which one owner of the Company may send the other an opinion on the value of the Property, and the other owner may choose either to buy the interest of the first owner or to sell its own interest to the first owner based on that value. LJL declined to participate.

**D. The proceedings in the district court**

LJL petitioned the Supreme Court of New York on September 7, 2011, to confirm the arbitrator's determination of Stated Value, but to vacate the arbitrator's refusal to also determine

the Purchase Price. On the latter question, LJL argued, in part, that Pitcairn had forfeited objection to arbitrating the Purchase Price by failing to move for a stay of arbitration of the Purchase Price within 20 days of LJL's demand as required by New York's state arbitration law, NY CPLR § 7503(c). Pitcairn removed the case to federal court on the basis of diversity of citizenship, 28 U.S.C. § 1332, and cross-petitioned to vacate the award because the arbitrator had excluded evidence in violation of the FAA, 9 U.S.C. § 10(a)(3).

On both issues, the district court ruled in favor of Pitcairn. The court vacated the arbitrator's determination of Stated Value by reason of the exclusion of the four Pitcairn exhibits. The court sustained the arbitrator's refusal to determine the Purchase Price, ruling that determination of the Purchase Price was not within the arbitration agreement and rejecting LJL's contention that Pitcairn had waived objection. LJL appeals those rulings.

Pitcairn meanwhile sued in the district court, alleging that LJL's conduct breached fiduciary duties as well as its implied covenant of good faith and fair dealing, and that LJL was equitably estopped from exercising its purchase option because it misled Pitcairn to believe that it would not exercise the option if Mekkawy were fired. LJL moved to compel arbitration, or in the alternative to dismiss the suit for failure to state a claim. The district court denied the motion to arbitrate, finding that these claims did not fall within the terms of the narrow arbitration clause, but granted the motion to dismiss. Pitcairn appeals the dismissal of the claims for breach of fiduciary duty and implied covenants.

## DISCUSSION

In reviewing a district court's decision to vacate an arbitration award, this Court reviews findings of fact for clear error and questions of law *de novo*. *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 136 (2d Cir. 2007). A district court's

dismissal of claims by reason of the insufficiency of the pleading presents a pure question of law, which is reviewed *de novo. Berrios v. N.Y.C. Housing Auth.*, 564 F.3d 130, 134 (2d Cir. 2009).

**A.      Pitcairn did not waive its objection to arbitrating the Purchase Price**

LJL contends that Pitcairn forfeited its right to object to arbitration of the Purchase Price by failing to move to stay the aspect of LJL's arbitration demand which sought determination of the Purchase Price within twenty days of service of LJL's notice of intention to arbitrate the Purchase Price in accordance with NY CPLR § 7503(c). *See, e.g.*, *In re Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144-45 (N.Y. 2008) (holding that a party could not stay arbitration where it did not file an application within twenty days per § 7503(c)).

We reject LJL's contention. In our view, § 7503(c) does not apply to these facts.[2] Section 7503(c) provides,

> A party may serve upon another party a demand for arbitration or a notice of intention to arbitrate . . . stating that unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time. . . . An application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded.

As we understand this provision, it applies to objections to arbitrate on the grounds that "valid agreement was not made or has not been complied with" and to objections based on time limitations. *Id.* Pitcairn's objection is not based on one of these grounds. Pitcairn's argument is that the agreement to arbitrate is limited to specified issues, which do not include the Purchase Price.

___

[2] We assume without deciding that § 7503(c) applies in an action brought in a federal court on the basis of diversity of citizenship.

**B.      The arbitrator properly refused to exercise jurisdiction to determine the Purchase Price**

LJL further contends that the arbitrator was required by the Operating Agreement to decide the Purchase Price of the Property. We disagree.

Section 8.8 of the agreement expressly provides for arbitration to determine Stated Value, under the provisions of Section 11.19. Nowhere in the agreement is there a suggestion that the Purchase Price be determined by arbitration. Furthermore, Section 11.19, the clause that governs arbitration procedures, states that it applies to "[a]ny provision of this Agreement which *specifically* provides" (emphasis added) for resolution by arbitration and adds, "[T]he arbitrators shall not add to, subtract from, or otherwise modify the provisions of the Agreement and may only determine the issue or question presented as their award."

In an effort to rebut this apparent prohibition of expansion of the scope of the arbitration, LJL relies on the close linkage between Stated Value and Purchase Price and seeks support from *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367 (1st Cir. 2011) and *McAllister Bros., Inc. v. A & S Transportation Co.*, 621 F.2d 519 (2d Cir. 1980). Neither opinion is helpful.

*Dialysis Access* involved a broad arbitration clause which provided for arbitration of "any dispute that may arise under this Agreement." *Dialysis Access*, 638 F.3d at 371. It has no application where the parties have elected arbitration of narrow precisely specified issues and have instructed the arbitrators not to expand the scope of the arbitration to other issues. Notwithstanding the general view expressed in that case favoring resolution of disputes by arbitration where the parties have agreed to that procedure, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

LJL cites *McAllister Bros.* as authority for the proposition that an issue arising out of an arbitrated issue is itself arbitrable when it is "inextricably tied up with the merits of" the arbitrated matter. *McAllister Bros.*, 621 F.2d at 523. Our case differs materially from *McAllister*. *McAllister* involved the agreement of a transporter of sludge ("Modern") to employ McAllister Brothers, Inc. ("McAllister") for all towing services it required, and the contract in that case prohibited Modern from employing another tower's services unless "the service rendered by McAllister does not meet the standards of the industry." *Id.* at 521. Any disagreement with respect to McAllister's failure to meet industry standards was to be settled by arbitration. *Id.* When Modern terminated the employment of McAllister and sought towing services elsewhere, McAllister claimed breach and demanded arbitration. Modern refused, and McAllister sued in the district court to compel arbitration. Modern raised the defense that McAllister had abandoned the contract "by failing to provide [Modern] with all necessary tugboat services." *Id.* at 523. The district court ruled that Modern's defense of abandonment should be heard by the arbitrator, and our court affirmed. According to Modern's contention, McAllister's abandonment consisted of its failure to provide Modern with all necessary tugboat services, and that claim was, at least arguably, within the scope of the conformity of McAllister's services to industry standards — the very issue the parties had agreed to arbitrate. We ruled that in deciding whether the arbitration agreement "arguably cover[s] the dispute at hand . . . doubts should be resolved in favor of coverage and arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 522 (citations and internal quotation marks omitted).

*McAllister*'s holding has no application to the present case, where the two issues (Purchase Price and Stated Value) are unquestionably analytically distinct, and thus the disputed

-12-

issue is not even "arguably" within the scope of the arbitration clause. In *McAllister* we held that the abandonment defense must be arbitrated because the claim of abandonment derived from, and was related to, the issue compelled to arbitration by the arbitration clause, as Modern contended that McAllister's failure to provide conforming service constituted its abandonment. *McAllister* is also inapposite because the arbitration clause there did not contain a clause expressly confining the scope of arbitration to specifically enumerated issues, as Section 11.19 of this agreement does.

In any event, even if we were to assume, despite §11.19's restriction of the arbitration to "specifically" designated issues, that the arbitrator would have acted within the limits of his lawful discretion had he expanded his determination to encompass Purchase Price, it was certainly not an abuse of the arbitrator's discretion to decline to do so. The district court correctly rejected this contention.

**C.      The arbitrator's exclusion of evidence was not an abuse of discretion**

LJL contends that the district court was unjustified in overturning the arbitration award setting the Stated Value. We agree.

As explained above, the arbitrator excluded four pieces of hearsay evidence offered by Pitcairn to support higher values for the Property. The district court held that the arbitrator's decision to exclude this evidence constituted illegal "misconduct" under the FAA, 9 U.S.C. § 10(a)(3). That statute provides that a reviewing court may vacate an arbitration award "where the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent and material to the controversy." The district court ruled that the arbitrator's exclusion of this evidence denied

-13-

Pitcairn a meaningful opportunity to present pertinent and material evidence of the value of the Property, which rendered the proceeding "fundamentally unfair" and therefore constituted misconduct that justified setting aside the award. *LJL 33rd St. Assoc., LLC v. Pitcairn Props., Inc.*, No. 11-cv-6399, 2012 WL 613498, at *7 (S.D.N.Y. Feb. 15, 2012). In the district court's view, this exclusion "prevented Pitcairn from effectively demonstrating" the agreement of four experts that the Property was worth substantially more than LJL's valuation. *Id*. at *6.

We do not disagree with the district court's general proposition that an arbitrator's unreasonable exclusion of pertinent evidence, which effectively deprives a party of the opportunity to support its contentions, can justify vacating an award. Nonetheless, we do not think this was an instance of such fundamental unfairness.

The district court recognized that the excluded valuations were all hearsay. It noted, however, that in arbitration proceedings there is no need to comply with strict evidentiary rules, *see Coppinger v. Metro-N. Commuter R.R.*, 861 F.2d 33, 39 (2d Cir. 1988), and that the AAA Rules and Mediation Procedures provide that "conformity to legal rules of evidence shall not be necessary." AAA Rule 31. The court concluded that LJL's objections to those exhibits, based on hearsay and other grounds,[3] "should have gone to the weight afforded to the Excluded Evidence rather than its admissibility." *LJL 33rd St. Assoc.*, 2012 WL 613498, at *6.

While it is indisputably correct that arbitrators are not bound by the rules of evidence and may consider hearsay, it does not follow that arbitrators are prohibited from excluding hearsay

---

[3] The grounds of LJL's objections included, in addition to hearsay, that Equity's offer was not binding, and that the other sources of evidence were hired guns or were unreliable for other reasons.

-14-

evidence, especially when (a) the evidence could be presented without reliance on hearsay and (b) its hearsay nature is unfairly prejudicial to the adversary. As to Pitcairn's four exhibits, both conditions applied. So far as appears, there was no good reason for Pitcairn to rely on hearsay. It could have presented this evidence, unencumbered by the hearsay objection, merely by calling the makers of the exhibits — thus providing LJL with the opportunity to cross-examine these witnesses in an effort to undermine the probative value of the exhibits. Furthermore, expert valuations of this nature are the product of so many complex factors, and so many assumptions (especially where the controversy is over a valuation differential as small as 20%), as to make it particularly important that the opponent of the valuations be offered the opportunity to test their conclusions by cross-examination.

Section 8.8 called for the parties to agree on an arbitrator, who would in turn appoint an appraiser. Stated Value was to be determined by the appraiser. If the arbitrator had presented Pitcairn's hearsay exhibits to the appraiser without LJL having had the opportunity to test their conclusions by cross-examination to explore the underlying reasoning, LJL would have been severely prejudiced. While Pitcairn may well have been harmed by the exclusion of its exhibits, it is not clear that this harm can be considered unfair when Pitcairn could have cured the problem simply by calling the makers of the exhibits as witnesses. Therefore, these circumstances were crucially different from those that led the First Circuit to vacate an arbitration award by reason of the arbitrator's refusal to give any weight to testimony from a trial transcript, *see Hoteles Condado Beach, La Concha & Convention Center v. Union De Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985), where the court of appeals concluded that the transcript was central to a

-15-

litigant's position and no other evidence was available to sustain it. In this case, there was no showing that Pitcairn could not call the makers of the exhibits, thus eliminating the hearsay problem.

For these reasons, we do not agree with the district court that the arbitrator's exclusion of Pitcairn's exhibits constituted "misconduct" in violation of § 10(a)(3) of the FAA. Arbitrators have substantial discretion to admit or exclude evidence. *See* Commercial Arbitration Rules of the American Arbitration Association, Rule R-31(b) ("The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant."). The exclusions in this case did not impair the "fundamental fairness" of the proceeding. *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). We therefore conclude it was within the bounds of the arbitrator's permissible discretion to exclude the exhibits.

**D.      Pitcairn has not stated a claim for breach of fiduciary duties**

Pitcairn claims that LJL violated its fiduciary duties by failing to disclose its intention to exercise the buyout option upon the discharge of Mekkawy and refusing to sell the property to a third party or to entertain third party offers. We disagree.

The purchase option upon discharge of Mekkawy was LJL's contractual right. The contract furthermore contains a fair mechanism (arbitration) for resolving any dispute over the price of the buyout should the parties disagree. Pitcairn does not contend that LJL ever made false representations about Mekkawy, or stated that it would not exercise the purchase option should Mekkawy be terminated. Indeed, Pitcairn did not ask whether LJL intended to exercise the purchase option, or request that it be waived.

Nor did LJL violate fiduciary duties by refusing Pitcairn's plea to market the Property to third parties to help determine its value. The contract between LJL and Pitcairn specifically contemplated an adversarial arbitration procedure to determine the value of the Property should the parties disagree. LJL had no obligation to agree to participate in the conduct of an illusory auction, deceiving potential purchasers into bidding for a property that was in fact not for sale, for the purpose of helping Pitcairn obtain evidence of value. There is no contention that LJL prevented Pitcairn from obtaining reliable evidence on the value of the Property by conventional methods — such as having it appraised by experts.

Pitcairn relies on *Richbell Information Services v. Jupiter Partners*, 309 A.D.2d 288 (N.Y. App. Div. 2003), where the New York court found a breach of the fiduciary duties owed by one party to a joint venture to the other. The facts of *Richbell* were very different from the present case, as they included a bid-rigging scheme by one party to force its co-venturer into default and thereby obtain its assets on the cheap. LJL is not accused of any analogous misconduct. *Richbell*, accordingly, does not furnish a precedent for imposing such liability on LJL.

**E.      Pitcairn has not stated a claim for breach of good faith and fair dealing**

Pitcairn also claims that by exercising the buyout option, LJL has violated its implied duty of good faith and fair dealing. The implied covenant of good faith and fair dealing bars a party from taking actions "so directly to impair the value of the contract for another party that it may be assumed that they are inconsistent with the intent of the parties." *Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991). However, the implied covenant of good faith cannot create duties that negate explicit rights under a contract. *Murphy v. Am. Home Prods. Corp*., 58 N.Y.2d

-17-

293, 304 (N.Y. 1983) ("New York does recognize that in appropriate circumstances an obligation of good faith and fair dealing on the part of a party to a contract may be implied and, if implied, will be enforced . . . . No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship."); *D & L Holdings v. RCG Goldman Co.*, 287 A.D.2d 65, 73 (N.Y. App. Div. 2001) ("The covenant of good faith and fair dealing cannot be used to add a new term to a contract, especially to a commercial contract between two sophisticated commercial parties represented by counsel."). Pitcairn had agreed with LJL in Section 8.8 of the Operating Agreeent that LJL would have the right to exercise a buyout option if Mekkawy ceased to be employed by Pitcairn. The mere fact of LJL's decision to exercise its contractual right, absent bad faith conduct, cannot be deemed a breach of its duty to deal with Pitcairn in good faith.

## CONCLUSION

For the foregoing reasons, the opinion of the district court is AFFIRMED IN PART and VACATED IN PART. We REMAND the case to the district court with instructions to confirm the arbitration award.