*Roy v. Buffalo Philharmonic Orchestra*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of March, two thousand seventeen.

PRESENT:
> ROBERT A. KATZMANN,
> *Chief Judge*,
> AMALYA L. KEARSE,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*.

---

PIERRE ROY,

> *Plaintiff-Appellant*,

> v.                                                            No. 16-717

BUFFALO PHILHARMONIC ORCHESTRA
SOCIETY, INC., MUSICIANS ASSOCIATION
OF BUFFALO NEW YORK LOCAL NO. 92,

> *Defendants-Appellees*.

---

| | |
|---|---|
| For Plaintiff-Appellant Pierre Roy: | LINDA LALLI STARK, Steven M. Cohen (*on the brief*), HoganWillig, PLLC, Amherst, NY. |
| For Defendant-Appellee Buffalo Philharmonic Orchestra Society, Inc.: | SCOTT P. HORTON, Bond, Schoeneck & King, PLLC, Buffalo, NY. |

For Defendant-Appellee Musicians
Association of Buffalo New York
Local No. 92:

CATHERINE CREIGHTON, Creighton Johnsen &
Giroux, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Telesca, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Pierre Roy appeals from the judgment of the United States District Court for the Western District of New York (Telesca, *J.*) entered on February 10, 2016, denying Roy's amended petition to vacate the arbitration award, dismissing Roy's breach of duty of fair representation claim against defendant-appellee Musicians Association of Buffalo New York Local No. 92 (the "Union"), and granting the cross-motion to confirm the arbitration award of the Union and defendant-appellee Buffalo Philharmonic Orchestra Society, Inc. ("BPO"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Roy's "suit, which alleges that the employer breached the [collective bargaining agreement ("CBA")] and that the union breached its duty of fair representation, is known as a hybrid § 301/fair representation claim," *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000), and it comprises two causes of action. "The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation . . . ." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). Although the arbitration decision Roy challenges here is final, he "may go behind a final and binding award under a collective-bargaining agreement and seek relief against his employer and

2

union . . . when he demonstrates that his union's breach of its duty 'seriously undermine[d] the integrity of the arbitral process.'" *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 61 (1981) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976)). To this end, we consider the integrity of the arbitration award, as well as Roy's claim that the Union breached its duty of fair representation.

## I. Arbitration Award

"We review a district court decision upholding or vacating an arbitration award *de novo* on questions of law and for clearly erroneous findings of fact." *Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 31 (2d Cir. 1997). Where, as here, a dispute is resolved through arbitration in accordance with a CBA, "[j]udicial review of a labor-arbitration decision pursuant to such an agreement is very limited." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). Although the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, does not apply to arbitrations conducted pursuant to the Labor Management Relations Act ("LMRA"), federal courts often look to the FAA for guidance in labor arbitration cases. *See Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 545 n.13 (2d Cir. 2016). The FAA's limited bases for vacating an arbitration award include instances where the award was procured by corruption, fraud, or undue means; where there was evident partiality on the part of the arbitrator; where the arbitrator was guilty of misconduct in refusing to hear evidence material to the controversy; or where the arbitrator exceeded his power. *See* 9 U.S.C. § 10(a).

Plaintiff-appellant raises four issues with the arbitration award, three of which he claims stem from the Union's alleged breach. First, Roy contends that the arbitrator committed misconduct by refusing to admit into evidence recordings and an accompanying transcript made

3

by Roy that allegedly capture the events of two meetings in dispute during the arbitration proceedings. "Arbitrators are accorded great deference in their evidentiary determinations," *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 107 (2d Cir. 2013), and they "have substantial discretion to admit or exclude evidence," *LJL 33rd St. Assocs., LLC v. Pitcairn Propr. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013). "[E]xcept where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997).

"[W]e have never held that the requirement of 'fundamental fairness' applies to arbitration awards under the LMRA," *Nat'l Football League Mgmt. Council*, 820 F.3d at 545 n.13, but we need not resolve this question here because Roy does not point to any actions on the part of the arbitrator that violated the fundamental fairness of the arbitration. Roy contends that the recordings and transcript would have substantiated his version of a dispute between Roy and BPO concerning his demeanor, negotiations over his salary, and his role in the orchestra, but the arbitrator expressly stated that this particular dispute was not a factor in his decision. The second meeting, between Roy and Maestro JoAnn Falletta, involved a discussion about whether he was purposefully playing beneath his ability. Apart from Falletta's testimony, the arbitrator expressly found in his Decision and Award of Arbitrator ("Award") that there was a "consistent, overwhelming pattern of playing that was out of the ordinary and that had an impact on nearby musicians," and this finding was based on testimony from as many as nine different musicians in addition to Falletta. Award at 37–38. Falletta's claims about Roy's behavior during that meeting, moreover, were not among the "most serious allegations" identified by the arbitrator that "justif[ied] the BPO's actions." *Id.* at 36.

4

Plaintiff-appellant also argues that the arbitrator exceeded his powers by hearing testimony concerning complaints and concerns about Roy's musical performance and musical competence, allegations that Roy contends may not be brought via arbitration under the Union's and BPO's CBA. Contrary to Roy's contention, however, the CBA states only that the arbitration provision "shall not be invoked for non-renewal matters based upon alleged musical incompetence." App. 379. Because Roy received a termination for just cause, and because the arbitrator found Roy's behavior to be "deliberate" — and far from incompetent — "at least in a substantial number of" occasions, Award at 38, his behavior, if anything, was musical impertinence, and so the musical incompetence provision is not relevant here.

In addition, plaintiff-appellant contends that the arbitrator improperly considered the testimony of BPO's witnesses — fellow musicians who allegedly had petty grievances against Roy — and failed to credit witnesses whose accounts corroborated Roy's versions of events. Roy contends "[t]here was clearly a strong bias against Mr. Roy among the various witnesses for the BPO" and that "[t]his type of misconduct and corruption is grounds to vacate" the award. Pl.-App.'s Br. 30. To overturn an arbitration award on these grounds, it must be "made abundantly clear that it was obtained through corruption, fraud, or undue means." *YLL Irrevocable Trust*, 729 F.3d at 104 (quoting *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 34 (2d Cir. 1951)). Roy's allegations fall far short. The arbitrator noted the difficulty of "tough credibility questions," and pledged to "do the best I can with the observations that many witnesses made in the course of this case." Award at 36. To this end, the arbitrator expressly discounted many of the claims made by witnesses testifying on behalf of the BPO, and he identified a number of problems with the BPO's handling of the disputes between Roy and other musicians. The arbitrator noted in particular BPO's failure to bring other musicians' concerns to Roy's attention

5

so that he might alter his behavior. Indeed, the arbitrator concluded that "[a]n award of a year's pay appropriately balances the equities and responsibilities in this case. It acknowledges that the BPO did not give Mr. Roy a chance to address some of these problems when they first came to the attention of the BPO. . . ." *Id.* at 45. However, the arbitrator also found that "Roy bears most of the responsibility for the events that led to his termination." *Id.* Given the arbitrator's thorough and evenhanded treatment of the competing accounts, it cannot be said that the award was obtained through fraud, corruption, or undue means.

Roy's remaining argument to vacate the award is that it is against public policy. While Roy's concern about his difficulty in finding new employment in a career where professional orchestra musician positions are extremely limited is understandable, this problem does not implicate a well defined and dominant public policy concern, and so it is not a proper basis to vacate an arbitration award. *See Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011).

## II. Duty of Fair Representation

Linked to his petition to vacate the arbitration award is Roy's claim against the Union alleging a breach of its duty to fairly represent Roy during the course of the arbitration. The district court dismissed this claim for failure to state a claim, and on appeal, we "review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

Roy contends that the Union's actions were arbitrary and constituted bad faith, grounds for a finding of a breach of the Union's duty of fair representation. *See Marquez v. Screen Actors*

6

*Guild, Inc.*, 525 U.S. 33, 44 (1998). "A union acts in bad faith when it acts with an improper intent, purpose, or motive," *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998), while "arbitrary conduct amounting to a breach is . . . intentional conduct by union officials [or] acts of omission which, while not calculated to harm union members, 'may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary.'" *N.L.R.B. v. Local 282, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 740 F.2d 141, 147 (2d Cir. 1984) (quoting *Robesky v. Qantas Empire Airways Ltd.*, 573 F.2d 1082, 1090 (9th Cir. 1978)). The burden on the plaintiff in a hybrid § 301/fair representation case is to demonstrate a causal connection between the union's wrongful conduct and his injuries, showing that the "breach must have contributed to the arbitrator's making an erroneous decision." *Wood v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 406*, 807 F.2d 493, 500 (6th Cir. 1986).

Linking his objections to the arbitration award to the Union's actions, Roy in his amended petition alleged that the Union "breached [its] duty to Petitioner by inadequately representing" him during the arbitration. Am. Pet. ¶ 34. He claims that the Union "failed to properly cross-examine BPO witnesses, raise objections and introduce evidence," *id.* ¶ 35, "failed to properly object to evidence presented on musical performance," *id.* ¶ 36, and "failed to advance crucial arguments" pertaining to the aforementioned recordings and transcript Roy sought to have admitted into evidence, *id.* ¶ 37, all issues discussed above. None of the actions Roy identified in his complaint come close to demonstrating improper intent, purpose, or motive, or egregious behavior. After all, "[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989). Such tactical choices are precisely

7

what the Union contends happened here: any failure of its counsel to object to witness testimony and discussion of Roy's musical performance or to press for admission of Roy's transcript and recordings falls within the range of reasonable tactical decisions. At the motion-to-dismiss stage, of course, the question is whether Roy's "allegations 'nudge [his claim] across the line from conceivable to plausible,'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 710 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)). They do not; the Union counsel's choices concerning the particulars of cross-examination tactics and evidence admissions cannot plausibly be construed as egregious as pleaded.

In plaintiff-appellant's memorandum in support of his amended petition to vacate the award, which the district court "regarded as analogous to an amended complaint filed under Fed. R. Civ. P. 15(a)(1)(B) in response to a motion to dismiss," Text Order, No. 15-283 (May 8, 2015), ECF No. 11, Roy raised the additional allegation that while the arbitration was still ongoing, the Union demanded that Roy deposit $15,000 into an account to compensate the Union's counsel for his representation of Roy at arbitration. Roy contends this demand was not contemplated by the CBA and that it constitutes bad faith on the part of the Union. However, to establish a claim of bad faith, a plaintiff must demonstrate not only bad faith but also "a causal connection between the union's wrongful conduct and [his] injuries." *Spellacy*, 156 F.3d at 126. This Roy has not done. Roy vaguely pleaded that after he refused to contribute to the cost of arbitration, "[w]hile representation continued, it [was] clear that the Union was not happy with having to represent Mr. Roy and did not fully support his concerns and interests." Memo. in Support of Am. Pet. at 12. Yet his evidence that the Union did not support his concerns and interests is the same set of grievances discussed above concerning tactical choices made during arbitration; none of those allegations nudge his claim from conceivable to plausible evidence of

8

bad faith, let alone suggest that they might have altered the outcome of the arbitration. In short, Roy has not pointed to any actions taken or not taken by the Union that "contributed to the arbitrator's making an erroneous decision." *Wood*, 807 F.2d at 500 (emphasis added).

We have considered all of Roy's contentions on appeal and have found in them no basis for reversal. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk